## Security Benefit Association v. Kibby.

(Decided May 31, 1927.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Evidence.—In action on life insurance policy, where defense was misrepresentations, life insurance agents of long experience, though not medical experts, were qualified to testify as to whether fraternal insurance company would reasonably have accepted application, knowing of death of applicant's sister from tuberculosis.

2. Evidence.—Where hypothetical question asked is based on facts in evidence, answer thereto may be properly allowed.

3. Evidence.—Question, asked insurance agents, whether insurer would reasonably accept applicant, whose sister had died from tuberculosis within preceding year, held proper, as hypothetical question, where based on facts as proved in action on life insurance policy.

4. Trial.—Evidence is for jury, where conflicting on principal issue.

5. Insurance.—In action on life policy against fraternal insurance company, where defense was misrepresentation, due to insured's failure to state that sister had died from tuberculosis, whether company might reasonably have accepted application, notwithstanding such circumstance, held for jury.

6. Insurance.—Action of court in overruling demurrer to petition in action on policy for failure to state that insured had complied with laws of fraternal organization held not error, where petition alleged applicant had paid dues, and where policy was not filed.

7. Pleadings.—After judgment, pleadings will be liberally construed, to uphold verdict.

8. Pleading.—Failure of petitioner in suit for death benefits to assert member's compliance with laws of order held not to warrant disturbing verdict for plaintiff, where dues had been paid and breach of conditions was not affirmatively alleged by society.

9. Insurance.—Petition in action on life insurance policy, which showed right to recovery, was not demurrable because claiming greater amount than policy authorized.

10. Appeal and Error.—In action on life insurance policy, instructions permitting jury to find for plaintiff for greater amount than authorized by policy held reversible error, where jury returned verdict in accordance with court's instructions.

11. Appeal and Error.—In action on insurance policy, error of court in authorizing recovery for amount greater than policy allowed could be corrected by court on return of case, without necessity of awarding new trial, where verdict gave plaintiff recovery following instructions.

WALTER P. LINCOLN and L. D. GREENE for appellant.

JOS. M. HUFFAKER, RICHARD P. DIETZMAN and LAWRENCE S. GRAUMAN for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS— Reversing.

Mrs. Margaret A. Kibby, as beneficiary, sued the Security Benefit Association, a fraternal organization, and recovered $1,000 on a policy of life insurance upon the life of Harry T. Kibby, deceased. The defense was that the insured had made untrue and false answers in his application for insurance, viz.:

"Q. How many sisters have you dead? Give answer in this space? A. One. Q. No. 9, subsec. (a). Have either of your parents, your brothers or sisters, or your wife or husband, or children, ever been afflicted with consumption, cancer, insanity, epilepsy, heart disease, or have any of them committed suicide? If so, give particulars." To each the insured answered: "No."

The constitution and by-laws of the company specifically provide:

"That no payment shall be made on this policy on the death of a member who has obtained admission into this association by false or untrue answers . . . in his application relating either to personal or family history."

It appears in evidence that Mrs. Margaret Kibby was a widow and the mother of six children, the oldest of whom, Louella, died at her mother's home on the 10th of April, 1922. She had been in bad health for some time previous, though she did not become seriously ill until

a few months before her death. She visited her brother Harry in Chicago during the summer of 1921, and remained there for several weeks, returning before Thanksgiving. On her return home she was taken worse, and declined rapidly; her attending physicians stating without reserve that she was afflicted with pulmonary tuberculosis, and that her death was produced by that disease. Her mother, however, refused to accept that diagnosis, and still claims that her trouble was goiter. Harry had formerly lived with his mother, and at her suggestion some years before had taken a policy of $2,000 in appellant company, which has been paid without protest. In October, 1922, he visited his mother and at her request made application for this insurance. He visited her again during the Christmas holidays following. Shortly after his return home he became ill, and died on the 10th of May, 1923; the cause of his death not being shown. At the time of the application in October, 1922, the medical examiner for appellant made a thorough examination of the applicant and recommended him to the company as ''a first-class risk;'' stating that from his examination he believed he would live out the full period of expectancy of life for one of his age, and otherwise recommended that the insurance asked be granted. However, he was not advised at the time that appellant's sister, Louella, had died of consumption. He was asked:

"Doctor, would you have recommended this risk, had you known that Harry Kibby's sister had died within a year prior to this application from tuberculosis?" and answered, "If the applicant was in first-class physical condition, I would recommend 'Yes,' as they have in the application any deviation from the normal of the family history." This answer evidently being based on what he would have done, had Harry correctly stated the facts as to his sister's death.

In answer to the question "whether or not you know that, if the applicant had said one of his sisters had died with tuberculosis, the company would have issued the policy," he said:

"I know that there are companies that issue them, by making notation that the person did not live with the applicant, or in the same state with him."

He further states that he has been acting as examiner for this company for 12 or 13 years, and if he had reported Harry Kibby's sister had died from tuberculosis within less than a year prior to the application, that it would not have issued the policy, unless it first wrote back and found something to justify it in deviating from its course. The appellant also introduced a number of expert medical examiners, who testified that the company, acting ordinarily and reasonably and in accordance with the usual practice of life insurance companies under similar circumstances, would not issue a policy of life insurance upon an applicant whose sister had died within a year prior to that examination from tuberculosis.

On the other hand, a number of life insurance agents of long experience, though not medical experts, introduced by plaintiff, were propounded a hypothetical question embracing the proven facts in this case, including the death of applicant's sister from tuberculosis within 12 months prior to the application, his family life and history, including the examination, and asked, assuming these facts to be true, if he had disclosed his sister's death from tuberculosis within the time mentioned, whether or not fraternal insurance companies, acting reasonably and naturally, and in accordance with the usual practice of life insurance companies under the circumstances stated, would accept such application and issue the policy, to which they answered, "Yes." The witnesses were qualified to testify on this point. New York Life Ins. Co. v. Long, 211 Ky. 656, 277 S. W. 978. And as the hypothetical question asked was based on the facts in evidence, it was competent; hence there was a conflict of evidence on the principal issue, and the court did not err in overruling the motion for a peremptory instruction.

The policy was issued and made payable in consideration of the insured having complied with all of the laws of the order, and with all of the provisions of the constitution and laws of the order, and being at the time of his death a member of the order in good standing. It was not alleged in the petition that he had complied with these provisions, except it was stated therein that the applicant had paid all his dues at the time of his death. A demurrer to that pleading was overruled, and this is relied on as error. Perhaps it did not show a technical compliance by deceased with all the conditions of the

policy, but as the policy was not filed as an exhibit, or any motion to file made, it cannot be said that the court erred in its ruling at the time it was made. After judgment, the pleading will be liberally construed to uphold the verdict, and in view of the affirmative allegation of the petition above mentioned, and in the absence of an affirmative plea in the answer setting up a breach of some of these conditions, we are not now disposed to disturb the verdict on this ground.

The policy was for $1,000, but the full amount was not due until it had been carried for three years after the application. During the first six months the amount payable was 60 per cent of the policy, and during the second six months 70 per cent. Harry Kibby died during the second six months after its issue, so that the amount collectible was only $700. It is urged that the petition was demurrable in asking $1,000. We do not think so. It showed a right of recovery, and to claim more than the policy authorized did not render it demurrable. But this led the court into an error in the instructions. While otherwise correct, the instruction directed the jury "to find $1,000 for plaintiff, unless they believed," etc.—setting up the defenses in issue. We have seen that $300 of this was unauthorized. The jury, in obedience to the direction of the court, returned a verdict $300 in excess of the amount recoverable under the policy. This was an error of the court, and necessitates a reversal. Reynolds v. Powers, 96 Ky. 481, 29 S. W. 299; Cooke v. Clark's Committee (Ky.) 51 S. W. 316; City of Dayton v. Gardner (Ky.) 40 S. W. 779. But under the authorities, supra, it is not necessary to award a new trial, as this error can be corrected by the court on a return of the case.

Wherefore the judgment is reversed, and cause remanded, with directions to enter judgment on the verdict in the sum of $700, with the interest and cost heretofore allowed by the court.

Judge Dietzman not sitting.