## Prudential Ins. Co. of America v. Alsobrook.
(Decided Oct. 2, 1936.)
(As Extended on Denial of Rehearing Dec. 18, 1936.)

R. W. KEENON, B. L. KESSINGER and CHARLES FERGUSON for appellant.

WELLS & WILSON and L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

On November 2, 1931, appellant issued a policy to appellee, the semiannual premium being $54.80, due on the 2d day of May and November of each year. In addition to insurance on the life of appellee, the policy carried indemnity and premium waiver provisions, effective in case of disability as defined in the policy.

It was provided in the policy that if insured should become totally and permanently disabled from injury or disease to such an extent as to incapacitate him from engaging in any occupation for remuneration or profit, the insurer was to pay $10 per month per $1,000 of life insurance carried. The policy contained provisions with regard to notice of disability and premium waiver, substantially as follows: Written notice to be given to the insurer at its home office during the lifetime of the insured, and during the period of total disability; failure to give such notice within the time herein provided shall not invalidate any claim hereunder if it be shown not to have been reasonably possible to furnish such notice and that notice was furnished as soon as was reasonably possible.

The insurer was to have due proof that total disability exists and is permanent, which shall be deemed to be the case if the insurer shall have received due proof that such total disability has existed continuously during a period of not less than four months immediately preceding receipt of proof by the insurer.

It was further provided that if the disability occur after payment of the first premium and while the policy is in full force, and that such total disability occur before the due date of a premium in default, except that if such total disability shall have begun after the due date of a premium in default, but not later than the last

day of grace, if such due date was within thirteen months immediately preceding receipt by the company of notice of disability on which claim may be based, the disability benefits will be granted as if default had not occurred.

Another clause provided that the insurer would waive payment of premium "the due date of which, as specified," occurred after the commencement of total continuous disability, but in no event before a date more than one year prior to the date of receipt of notice of disability by the insurer.

It was also provided that default in premium should void the policy, and that the grace period should be thirty-one days, "during which time the policy will remain in force."

On August 2, 1934, claimant filed suit, claiming that he was then, and had been suffering from pulmonary tuberculosis, and by reason thereof was totally disabled since December 15, 1932; that he had furnished proof of his disability to the insurer at its home office, but they had refused to grant the benefits provided by his policy, the insurer claiming nonliability on the grounds that his policy had been cancelled for nonpayment of premiums. In a general way he alleged that he had "kept, done and performed every part and condition" of his policy, and that since appellant had breached its contract it owed him $50 per month from December 15, 1932, to the date of the suit, which would amount to $950. This sum, by several amendments filed prior to trial was raised to $1,600.

The insurer filed special demurrer to the petition, which was overruled, whereupon general demurrer was filed, as was a motion to require plaintiff to state specifically the dates of notice, and proof of disability. The demurrer was overruled, but the orders do not show a ruling on the motion. Thereafter appellant answered, first denying in specific terms the allegations of the petition, except as to the issuance of the policy. Affirmatively, after stating specifically the terms of the policy, it was alleged that plaintiff had failed to pay the premium due on November 2, 1933, and because of such failure the policy was marked "lapsed as of November 2, 1933," and was never renewed.

It is also alleged that insured did not notify insurer of any disability until December 18, 1933, and did not furnish any proof until April 2, 1934, several months after the policy had lapsed. It admits the premium due May 2, 1933, was received and carried the policy to November 2d of the same year. In a third paragraph it was pleaded that if the insured was totally disabled within the meaning of the policy, it occurred after the lapsation of the policy; hence no benefits were due. The insured followed with a reply and amended reply which denied the allegations of the answer, and affirmatively alleged that on December 18, 1931, he gave the insured notice of his disability; that insured had no notice of cancellation until May 21, 1934; that as soon as it was possible to do so, he was examined by several physicians and furnished insurer with due proof of his disability. Appellant filed rejoinder to appellee's reply, denying the allegations thereof.

On September 19, 1935, the case came on for hearing, the issues thus made were submitted on proof, and at the close of testimony for appellee and the hearing of the entire proof, appellee moved for a peremptory, which motion was overruled. The jury returned a verdict for appellee for the full amount sought and the court entered judgment accordingly, amending it later so as to include interest.

From the judgment so rendered the insurer has appealed, and it is strenuously argued by appellant that the judgment below should be reversed on the following grounds: (1) Refusal of the court to direct a peremptory instruction in its behalf; (2) the court erred in giving an instruction allowing disability from the date alleged in the petition as the beginning of disability, since the policy limited liability to a period from three months of the beginning thereof; (3) that the proof clearly showed that insured was not disabled prior to the time the policy had lapsed on November 2, 1933, or in any event on December 3, 1933, the date when the grace expired; (4) that no proper notice was given to insurer of the disability until after the policy had lapsed; and (5) the jury was prejudiced by improper argument of appellee's counsel.

The policy in question was issued to appellee on November 2, 1931, at which time he was forty-two years of age, and a farmer and traveling salesman. At the

time of the issuance of the policy he was selling "Watkins" goods and working on a state highway. In the latter part of January or first of February, 1932, he had "flu" for a month or two and was not able to work. He went back to work about May 1, and though hardly able to work kept on until July 1, 1932, when he "gave it up."

Later appellee got notice for his premium due, and mailed a check to the insurer, and told them, "I did not think I owed the premium; that I was disabled and had not been able to work since July and to please send the blanks so I could furnish the necessary information," and he says he never heard from them. As to his condition he says he was "poorly" during the year, 1933; he was suffering from a cough, so weak he could not do much more than "get up into town; I could not tell what was wrong." He said that he had not been able to labor since July, 1932; "I was too weak and have not had strength to do anything." He says that immediately following the notice he did not furnish any medical proof because he had none.

An attorney for appellee testified that appellee consulted him regarding claim against the company, and he wrote them at Newark and told them of appellee's disability and asked for blanks for medical proof, and they sent him the forms some time in April or May, 1934. He turned the blanks over to physicians who examined the appellee. It developed from a letter introduced that the proof was furnished May 2, 1934, which letter also showed that the attorney had notified insurer on December 18, 1933, of insured's disability and condition. Appellee says that in July, 1932, he notified Mr. Land, an agent of the company, of his condition and asked him to request blanks for filing reports. Not receiving them, he says he notified the company's agent in Louisville. It may be questioned as to whether or not Land was agent for the insurer, but this is not important, since there is proof that notice was given in writing to the home office in December, 1933. After the proof went in on May 2, 1934, the appellant, on June 25th, declined to pay benefits because appellee had not been, as it thought, incapacitated within the terms of the policy, and because it concluded the disability had occurred after default in premium payment.

Dr. Hayden examined the insured on December 13, 1933, and found him suffering with chronic pulmonary

tuberculosis.. He examined him again March 28, 1934, and in his report said appellee had been totally disabled since December 13, 1933; said he would break under physical work of any kind. Dr. Shemwell examined appellee by means of X-rays on October 19, 1934, and diagnosed pulmonary tuberculosis. His opinion was that the condition had existed for a couple of years. Dr. Dunn on behalf of insurer examined appellee on May 19, 1934, and found appellee suffering from active tuberculosis, totally and permanently disabled, and said that in his opinion appellee had developed tuberculosis after his attack of ''flu''; that the ''flu'' got the body in such condition that the tuberculosis took effect; and that total disability began with the tuberculosis.

The main contention presented by appellant seems to be that the disability did not occur until after the lapsation of the policy. A premium was paid in May, 1933, which carried the policy to November 2, 1933, with thirty-one days of grace added. The testimony shows that some time in November appellee sent in his check for the November 2d premium, which was received by the company, and credited to appellee. The check seems to have been dated November 25, 1933, but appellee stopped payment on the check and the company, after it had notice of the protest, went to its ''premium box'' and noted on the renewal card of appellee ''policy lapsed as of Nov. 2, 1933.'' It afterwards, sometime in May or June, 1934, notified the attorney for appellee that it would decline to allow benefits, and appellant's main contention is that it had no notice of disability nor report thereof until after it had lapsed the policy, and further contending that it is not liable because from the proof the disability did not exist until after the lapsation.

An examination of the policy, as copied into the petition, discloses that it is not a policy for one year with the privilege of renewal. It is a life contract and apparently subject to forfeiture only for nonpayment of premium as provided. Failure to give notice of disability, or to file proofs of loss as provided in the various conditions set out, do not work a forfeiture. The distinction between the two classes of policies is clearly pointed out in McMaster v. New York Life Ins. Co., 183 U. S. 25, 35, 22 S. Ct. 10, 46 L. Ed. 64; Masonic Relief Ass'n v. Hicks, 47 Ga. App. 499, 171 S. E. 215; Pru-

dential Ins. Co. of America v. Ferguson, 51 Ga. App. 341, 180 S. E. 503.

A reference to the testimony of the physicians, and of appellee himself, as well as of lay witnesses whose testimony did not transgress our rules with relation to such testimony, made a case sufficient to authorize the court to submit to a jury the question of his disability, the extent thereof, its beginning and continuation. Equitable Life Assurance Society of U. S. v. Merlock, 253 Ky. 189, 69 S. W. (2d) 12; Jefferson Standard Life Ins. Co. v. Pierce, 264 Ky. 698, 95 S. W. (2d) 579, decided May 5, 1936.

If the disability complained of by appellee was total and permanent, and commenced before December 15, 1932, the liability of the insurer began at the commencement of the total disability. Mutual Life Ins. Co. of New York v. Wheatley, 243 Ky. 69, 47 S. W. (2d) 961; Prudential Ins. Co. of America v. Kendrick, 262 Ky. 297, 90 S. W. (2d) 52; Jefferson Standard Life Ins. v. Pierce, 264 Ky. 698, 95 S. W. (2d) 579, and cases cited. Here there was sufficient proof that appellee's disability was total and permanent, and began prior to December 15, 1932, the date fixed in the petition. His "disability," as defined in the policy, having begun prior to the due date of the premium, while the policy was in force, before his sixtieth birthday, appellee's right to a recovery and the insurer's liability to pay, continued and existed at the time of bringing his suit, unless the quoted parts from his policy provided·for a forfeiture of or made the supplying notice of disability and proofs conditions precedent to his right to recover.

As to the notice the policy provides that such shall be given during the lifetime of the insured and during the period of total disability, making an exception where it is not reasonably possible to give the required notice. As to premium payments, in so far as same have any bearing on the right of insured or liability of insurer, it is provided that the disability shall occur after the first premium payment while the policy is in effect, and that "such total disability shall occur before the due date of the premium in default."

It is true that in quite a number of cases we have held "the furnishing of proof of disability before the premiums become default or the policy was lapsed was

a condition precedent to the waiver of payment, and accordingly proof was offered too late. Northwestern Mutual Life Ins. Co. v. Carneal, 262 Ky. 665, 90 S. W. (2d) 1010, 1011, and cases cited. However, in that case we said, and repeat here:

> "But those cases are not applicable because the conditions of the contract and the facts are different."

Jefferson Standard Life Ins. Co. v. Pierce, supra. And what we have said in that case is conclusive of all the questions involved here, save one, which is as follows:

Appellee's petition fixes the date of his right to receive benefits as of December 15, 1932. The policy provided monthly income paid during total disability, beginning at the end of four months, from the commencement thereof, "provided that no income shall be paid for any part of the first three months of such total disability." This controls the liability. The court instructed the jury that if they held for plaintiff, they should find for him $50 per month, from December 15, 1932, until August 15, 1935. The court should have fixed the date of commencement of benefits at a period three months later than December 15, 1932.

In this state of case where the items constituting the total amount recovered are separable, this court may properly eliminate any item not properly recoverable, and leave so much of the judgment as was properly recoverable under the verdict, intact. The court below had complete power to have so done. Chesapeake & O. R. Co. v. Meyers, 150 Ky. 841, 151 S. W. 19. Having failed so to do, we have authority to direct that the mistake be remedied by directing the entry of a correct judgment. Chesapeake & O. Ry. Co. v. Judd's Adm'x, 106 Ky. 364, 50 S. W. 539, 20 Ky. Law Rep. 1978; Louisville & N. R. Co. v. Scott, 141 Ky. 538, 133 S. W. 800, 34 L. R. A. (N. S.) 206, Ann. Cas. 1912C, 547; Garnett v. Farmer's Nat. Bank of Cynthiana, 23 S. W. 866, 15 Ky. Law Rep. 643; Johnson's Adm'r v. Johnson, 104 Ky. 714, 47 S. W. 883, 20 Ky. Law Rep. 890; Security Benevolent Association v. Kibby, 164 Ky. 220, 295 S. W. 164; Hickman v. Lay, 228 Ky. 656, 15 S. W. (2d) 515.

Judgment reversed and cause remanded, with directions to the court to set aside the judgment and to

450

enter a judgment for the amount of the verdict less $150.